Maddox whenever you're ready. May it please the court my name is Marie Maddox counsel for the appellant and we're here before the court to challenge the trial courts granting a summary judgment on some claims granting directed verdict on others and to challenge and to see if we could possibly get an in-bank review from the 11th circuit of the Terry versus Cook case and I'll start with that premise. The trial court had the district court had granted summary judgment based on Terry versus Cook and this was based on what we had claimed was a political association claim where Mr. Rabon had supported an alternative candidate to be incumbent and in the Cutcliffe case the court recognized that and actually had suggested and said that maybe that Terry versus Cook needed an in-bank review because it may be inconsistent with the Branty case from the US Supreme Court and so we had preserved that argument and we had facts to suggest that Mr. Rabon's demotion from a captain position to a deputy position in November of 2016. Do you concede you lose the political retaliation claim based on my precedent of Cutcliffe? Do you concede that you lose the political retaliation claim based on what we said in Cutcliffe? You just want us to you want that case to go on bond? I do. Lots of lawyers have wanted that case to go on bond. Yes sir, and maybe we'll be fortunate enough that this would be the one that the court would accept for an in-bank review that I will move on to another argument because I understand that both the district court and this court are bound by Terry versus Cook and we're trying to get an in-bank review. Yes sir. Your Honor, my second argument is that the trial court erred by failing to find that some of the disclosures that Mr. Rabon made during his employment were not protected under the First Amendment and what the court ruled was that a large number of the disclosures that he had made were made as an employee versus as a private citizen. Tell us the ones that you think the district court erred on when the district court found those statements were not matters of public concern because it looks to me like looking at all of the statements that are challenged seems to me your client was either acting within the scope of his duties or he was furthering private interest. I don't see any matter of the statements. So you tell us which ones you say comply with that requirement under Pickering. Yes sir. One was the Billy Benton where Mr. Benton had disclosed to his brother David Benton who was associated with someone who was going to be arrested and Billy Benton disclosed to his brother that there was going to be an to go behind a gun and so not to essentially avoid an arrest and that was one the Billy Benton and David Benton matter. The second was on Bradley Fellows who was a employee under another captain not under Mr. Rabon which is important and he reported that Bradley Fellows was using methamphetamine and had lied on his drug abuse treatment. Why wouldn't that be within the scope of his duties to report something like that? No sir and our argument is and I would rely on the Corallo and Corallo case from the 11th Circuit 2016 and also the Pouillon case and that was decided by this court in 2015 and he in the Pouillon case the police officer had acted the court found that he had acted as a private citizen when he complained to the mayor and city council members that the chief and assistant chief of police had obstructed justice, mishandled contraband and used excessive force and just because you're a police officer does not mean that you can't report wrongdoing within your agency and if the Pouillon case where you have a law enforcement officer. I don't disagree with that but why wasn't that part of his duties as a police officer to report something like that? That's not a matter of public concern is it? It's a responsibility he has working in that department to report that. Well the same could be argued then within the Corallo case that the city manager had an obligation to report wrongdoing by city council members and the same could be argued with the Pouillon case that the police officer just because he was reporting wrongdoing that that would be part of his job duties. Here Mr. Raybon as a captain not over Mr. Fellows and I think that's significant he was not responsible for the employment of Mr. Fellows that was under Captain Edwards and Mr. Raybon had reported his methamphetamine use and he had reported that he had lied on his employment application about having prior drug abuse treatment so I do not believe and this would be under the ordinary job duties under Lane versus Frank would it be part of his ordinary job duties to report a lie on an The third would be the Jeremy Branch matter and this was Donnie Branch was the second-in-command he was the chief deputy under the sheriff and he had reported that there had been evidence that was destroyed and actually had that it would the whole arrest of Jeremy Branch had been eliminated from the system and that Mr. Raybon had gone to the Florida Department of Law actually had reported that this whole incident had been swept away that there was no evidence of him ever having been arrested and it would not be part of his ordinary job duties under Lane to have reported that the son who was also happened to be a city a sitting City Commissioner or County Commissioner that he had been arrested and that all of the records regarding that arrest had been eliminated so I agree with you that's not part of his ordinary job duties but here's my concern about that and maybe you can correct me maybe I have a mistaken understanding of the record my understanding is that there's not I don't know if there's evidence whether is there evidence in the record with respect to his having gone to the FDLE okay and and is there evidence that and let me ask you where it is but also is there evidence that the defendants in this case knew that he went to the FDLE before they made the decisions and controversy we don't need direct evidence but is there any evidence there's evidence that the attitude towards him changed this was in June July of 2014 and after but didn't the didn't the individuals indicate that they didn't know about the report to the FDLE they did they said that but the there's a disputed issue of material fact on that issue and that is that the attitude began to change against him he was demoted or moved into the cold case position in February of 2015 these reports about mr. branch about Jeremy branch were in July I think it was July 14th that he was interviewed by FDLE and then you have all of the other incidents that begin to happen between July 2014 and I believe the date was January 13 2015 when he sent an email about whether mr. Bradley fellows should have been prosecuted and there's an error in our brief where we say we use the December 14 date on the Bradley fellows matter and we say it's a matter of weeks there's actually a shortened time period it is a matter of weeks because he his report on Bradley fellows to try to get mr. fellows prosecuted by the state attorney's office was actually January of 2015 and he is demoted or transferred into the cold case position taken from his captain position transferred to work one case all of his duties and responsibilities are removed from the drug force test the drug task force from the criminal investigations division that was within a matter of weeks of him asking that Bradley fellows be prosecuted is there anything in the mind's the legitimate reason that the defendants gave for engaging in those actions there was and that was my argument on the directed verdict if I could just finish wanting to add one more thing justice Davina to the the issue about what he had reported that we believe was still covered under the First Amendment the asking for the criminal prosecution was a big deal and when he requested and that is found on pages 124 125 of the transcript and there was an email that was sent by a subordinate employee and we never got the email and discovery that mr. Ray bond sent around that same time period requesting that criminal action be taken against Bradley fellows for the perjury but he discussed it on pages 124 and 125 during his testimony that he had actually sent an email up the chain of command requesting the Bradley fellows be prosecuted so that would be another matter that should have been protected by the First Amendment and your honor going to the directed verdict issue yes there was testimony that was on the three issues that the court allowed to go forward and on the whistleblower claim because the First Amendment was not even allowed the First Amendment claims were not even allowed to go forward at all but the on the three whistleblower claims where we're claiming that the court had erred in granting a directed verdict there was competing evidence to show that the people who had complained about him because the whole issue became whether this was just a business decision by the sheriff to remove mr. Ray bond from his position either in in February March of 2015 or later in November of 2016 and all of the people who had testified against him were people that he had either complained about well they were I think exclusively people that he had complained about wasn't that part of the problem I mean didn't didn't the sheriff originally give him the benefit of the doubt when he went to the sheriff and said I have these investigators working for me I'm having trouble with three of them and the sheriff looked at it and well they've been complaining about you as well but I'm gonna give you the benefit of the doubt but look you can hire more investigators but if you continue to have these problems then I may have to re-examine my decision I mean did that not occur and of course answer the question thank you yes there were people who complained but the the complaints that were made every one of those was refuted for example mr. Edwards complained and he was the person who mr. Ray bond was bringing up the subordinate employees and saying that these subordinate some of his subordinate employees were violating the law every one of those complaints were refuted during the trial for example when mr. Edwards brought up that he was having difficulties could not work with other agencies then we brought the police chief in from the city of Mariana we brought folks in from other agencies to show that all of those claims every claim that had been made against him was wrong so when you take an employee who has been there for 20 years or so 15 20 years with a spotless record and then you all of a sudden transfer him to a cold case position where he's responsible for one case rather than the gigantic responsibilities he had in his fire essentially demote him four levels down and we have evidence to suggest and show that it was only the people who he had complained against or their one supervisor then it doesn't that create a factual issue for the jury should that have been taken away from the jury and that's the argument that I made below thank you and you've reserved four mr. Evans for sheriff Roberts just to start with the last points that were made by counsel with regard to refuting the particular points that had been brought up about Raven and the issues that had been brought to the sheriff's attention and like that's not the point that's not why the sheriff moved Raven what is undisputed which was recognized by the district court was that there was turmoil it didn't matter who was right or who was wrong it was readily apparent to the sheriff that there had been turnover in the drug task force for years branch testified that that was never refuted and that there was ongoing dissension in the drug task force he didn't have that problem with Edwards he didn't have that problem in CID with Virgil he had a localized problem in the drug task force with this ongoing dissension recap very briefly and it's apparent from the record they're at the airport headquarters for the drug task force he moves them 2013 because he's got the squabbling sheriff wants to get more involved 2013 there were four detectives he moves three out of the four including John Allen who was the subject of the whistleblower complaint May or June of you know 2013 doesn't move Allen doesn't move any of the others moves three out of the four and then he replaces them and then he replaces them with people that the plaintiff wanted replaced how many of those complained once those new ones come on board how many of those then complained these are people the plaintiff wants as I understand it three he replaces three gets his selections he makes the selections as he did throughout drug task force when he was the captain he replaces three and two of them Rolf Smith Steve Smith they're not the subject of any whistleblower complaints six months after the sheriff trades these people out two of them are complaining about similar issues mood swings managerial style being isolated in DTF and now it's at the same time he's got an issue with Edwards now this is before there's any protected activity alleged you know with regard to whistleblower that's not till like May of 2016 so he's got two captains that are squabbling on this video and he's got two out of the three that were replaced that are now complaining about the captain of the drug task force what's he to do he moves Raven because he had told him before hey if this doesn't work out then we're going to go in a different direction and he did he moved he moved Raven out but he didn't demote him he didn't cut his pay he utilized his skills he was an investigator so he moves them into a position where he can be a captain and then uses investigative skills but he would not supervise anybody because that was the heart of the problem it wasn't who was right or wrong it was the dissension and the turmoil and that was undisputed let me ask you this I want to kind of turn you to something that bothered me a little bit after hearing opposing counsel's argument clearly on the political retaliation you win based on our custom of Cutcliffe and she's conceded that but go to the First Amendment claims and whether or not this speech is a matter of public concern she gave if I wrote them down correctly at least four examples where she says those those items of speech really did concern a matter of public concern I want you to tell us why they did not begin with Carollo because I think Carollo really sets this up in terms of why it's different you know Carollo you've got a city manager that goes to local and violations clearly something that's not within the ordinary scope of duties and outside the workplace that's that's a context is important you know and that was an important fact in the court's decision in Carollo this is completely different you've got John Allen and let's begin with with that John Allen is according to Raven compromising a search warrant that's being executed by the police and complaining about a member of the agency that's tipping off the suspects of a search warrant that's obviously something that's tied to his ordinary duties you would expect a captain of the Drug Task Force to go to the sheriff and say John Allen a member of this agency is tipping off suspects that's completely different it's within the workplace it's within the scope of his duties Billy Benton Billy Benton is a member of the agency there was an ongoing investigation Maurice Wilson it was a joint investigation between Drug Task Force and Sneed's Police Department and according to Raven Benton talked to his brother who may have tipped off Wilson and that is clearly again within the workplace related to his duties it's an ongoing investigation in which DTF is involved clearly distinguished you know from Carollo. What about Miss Maddox's statement that she did not supervise, that he did not supervise this individual? I mean if anybody within the agency is compromising one of his investigations he's got an obligation to tell that to the sheriff it wouldn't matter it's if you're going to think about whether or not he's speaking as a citizen or whether he's speaking as an employee when you look at the context of this it obviously falls on the employee side not on the citizen side he's not going to the mayor right he's not going to the County Commission he's going to the sheriff about an internal matter it's work-related. What if he's just another deputy sheriff and he goes and reports it? I think it would be the same thing I think a deputy would have an obligation to tell the sheriff about criminal conduct or misconduct on the part of another deputy but but there's no so there's no protection if you have a corrupt police department and you've got a deputy sheriff who's trying to do the right thing there's no whistleblower protection in that situation. Whistleblower or First Amendment? Whistleblower. Okay well I think there's an argument for whistleblower where there's no argument for First Amendment you know that it depends again whether it's in writing or whether it's verbal you know did he go to the sheriff and say sheriff Billy Benton talked to his brother about this investigation with regard to Maurice Wilson he goes to the sheriff and he tells the sheriff that's not protected that's not protected but if the sheriff reached out to him or there was an ongoing investigation or inquiry then he was requested to participate in inquiry and that would be protected. Okay so again context matters. Bradley Fellows? Let me ask you something I understand what you're saying but it seems like also wouldn't it also be a matter of public concern if you've got a corrupt I'm not suggesting that's a situation here I don't in any way mean to suggest that this was a corrupt Police Department but if you have in hypothetical a corrupt Police Department and you've got a deputy who is trying to do the right thing what is he to do? Go outside the agency if that was the case. Let's take Bradley Fellows no Jeremy Branch is a better example okay because I haven't got to him so let me let me talk about Jeremy Branch let's suppose Raven goes not just to Travis Lawson who's like a co-worker he's on the drug task force right Lawson in his deposition said that he and Raven were good friends they often talked about issues relating to Jackson County Sheriff's Office but let's say Raven doesn't go to Travis Lawson he goes to the Office of Executive Investigations or he goes to the County Commission or he goes to the governor context matters I do not believe that if a deputy reports to the sheriff misconduct involving another member of the agency that's First Amendment protected because it is within the ordinary duties you would expect a deputy to go to the head of the agency with regard to policy violations and potential criminal misconduct you know the First Amendment doesn't protect everything that might be of interest to the of course but it does protect matters of public concern and a corrupt Police Department it seems to me would be a matter of public concern well I realize that some things can fall into both categories and that's where it becomes a little difficult maybe you can help us with drawing the line yeah I think Garcetti drew that line it did but it's I mean it's not it's as clear as it probably can be but it's not well you know I think Garcetti Elvis and the King opinions that were decided by the court have given us factors that should be examined by the court in determining is this speech as an employee or is a speech as a citizen and a couple of the factors that are critically important was it made public was it outside the workplace or inside the workplace and you know Elvis for example do you know you've got these psychologists that are complaining about management you've got with regard to King a public safety issue with regard to a firefighter who doesn't have medical clearance she called a public safety but nonetheless the court said no this is an internal matter it's work related and I think ultimately that's the inquiry by the court given all the factors is it work related and I would submit to you that in every instance that we have here it was work related because of again within the workplace he goes to Travis Lawson who was like a co-worker on the drug task force with whom he had confided other matters who was a good friend it's work related if I may just touch on the reorganization because that was also as you know part of the judgment as a matter of law and here's Raven who has been moved to a position as a captain supervising nobody but he's being paid as a captain salary but things change as far as the sheriff is concerned and that's the budget that testimony is undisputed that his finance director Linda Cowan told him he's got a $91,000 more than what they got position is that there was actually more money and salary from one year to the next well as Cowan explained that was because of the year before County Commission had given pay raises it didn't mean that they had more to work with as Cowan testified operational expenses were down capital outlay was down from the year before they eliminated the contingency reserve branch testified she was worried about whether or not they were going to both Roberts and Cowan testified that she related her concerns to him and as the district judge pointed out here's a captain who's supervising nobody who is essentially a luxury sheriff doesn't need three captains he only needs two that really is undisputed testimony with regard to the the budgetary issues and his reliance upon Cowan's concerns with regard to the budget he reorganized he decided to put more people on the road and he basically cut a financial liability he cut a captain that he really was not in a position to afford the position of the appellant is that there were other opportunities for the sheriff that he could have moved Virgil Watson he could have done something with he didn't have to spend money on vehicles for example but as the district George judge noted it's not the authority it's not the responsibility of a federal judge or a jury to second-guess a sheriff a decision maker on those managerial decisions no reasonable jury could have found for the plaintiff with regard to these facts I'll be happy to answer any other questions or concerns I thought the basis of I thought the basis of judge Henkel granting judgment as a matter of law was he found the plaintiff did not carry the burden of showing pretext wasn't that the basis of it if you go through the the order on the judgment as a matter of law he explains clearly the move from drug task force to the cold case position and the reorganization and going to your point judge that there was no pretext because that was really never in doubt that it was never disputed so to your point yes that the plaintiff never really disputed as I indicated at the beginning of my argument the dissension within the drug task force and also the sheriff's need based upon the budgetary issues to cut a captain that he really did not need to afford anymore and reorganize the agency so to your point yes if there are other questions from the court I'll be happy to address them thank you request that you refer me order on both the summary judgment and also the judgment as a matter of law thank you mr. Evans miss Maddox viewed in the light most favorable to the non-moving party that the evidence points overwhelmingly in favor of one party such that reasonable people could not arrive at a contrary verdict the question in this case before this court is whether there was evidence that would show that the pretext and judge demeanor you're absolutely right this is I did make one misstatement though I thought it I used the term judgment as a matter of law it was a directed verdict at the close of the plaintiff's case and the difference yes there is and what the question is whether though there was enough evidence from which a jury could reasonably have found in his favor and whether the evidence so overwhelmingly pointed in favor of one party and by we brought in witnesses to show that every he had been reporting wrongdoing about mr. Edwards and folks that were under his supervision and that that everything was instigated instigated by Scotty Edwards and the people that he did bring in that were new folks the Smith folks Ross Smith there was one issue that they had been asked to prepare a report about and they did prepare a report about it but that doesn't mean that he has ongoing problems with them and he all of these folks it was all instigated by evidence to show that and to show that every claim if the sheriff had fully investigated any of these claims would have found that not one allegation against Scott against Joey Rayburn was Rayburn was true we had other people who came in that testified that this event didn't happen that event didn't happen kicking a trash can for example didn't happen I mean we brought in the evidence to show that those were just not true had the sheriff done any investigation and the sheriff knew that he was reporting these folks second John Allen mr. the athlete has argued that John about John Allen and whether it was when his within his job duties to report this I'm not arguing that one the ones that I brought up or what I brought to the court's attention about mr. fellows etc but I did not bring John Allen up that one I think could arguably been have been within his job duties because mr. Allen had been under his supervision budget shortfalls and the justification that the sheriff gave we brought the actual budgets in to show that the categories where they were claiming that there was a budget shortfall was just plain false and we brought that evidence before the jury to show that where they were claiming that the salaries that was low from one year to the next year and then this is why it was justified that he would be removed from the captain position we brought the evidence in to show that that was false that was again a jury issue and that fell on the heels of mr. Ray bond having reported Scotty Edwards a year and a half of him being harassed by Scotty Edwards people ignoring him him not being able to go to attend meetings captain meetings he was essentially became the pariah after he public concern we have cited cases in our brief fully on case Cooper bikes Phillips and cited all of those cases in our brief saying that corruption within a police department is certainly a matter of public concern and that the law and that was clearly established which the court had found also the law was not clearly established back in the 2016 time 1516 time period and we was work related is not the issue because the US Supreme Court and this court have recognized that you learn about these events during the course of your employment and that just because it arises during work does not mean that you don't still continue to have First Amendment protection all right the next case is Davis versus Edwards